SMITH *v.* TIPPS ENGINEERING & SUPPLY Co.

5-2053                                   333 S. W. 2d 483

Opinion delivered March 28, 1960.

*Boyce R. Love,* for appellant.

*E. J. Butler, Jack P. West,* for appellee.

JIM JOHNSON, Associate Justice. This is a case of first impression in Arkansas. It involves an interpretation of part of Act 315 of 1941, "The Uniform Contribution Among Tortfeasors Act."

In the summer of 1956, The Tipps Engineering & Supply Company, appellee, constructed a grain elevator near Dumas, Arkansas, for T. F. Shea, Jr. and George Cousins, d/b/a Shea and Cousins Grain Elevator. In the course of the construction, appellee installed an overhead truck hoist in the elevator which was for the purpose of lifting the front ends of trucks to facilitate unloading.

In December 1957, Dan Davis, a negro farmhand who worked for one of the customers of the elevator was standing near the hoist. As a truck which was being unloaded at the time drove away from the hoist, the hoist fell and struck Dan Davis, killing him almost instantly.

Thereafter, Clay Smith, Jr., appellant, was appointed Administrator of the estate of Dan Davis, and entered into a settlement with the Shea and Cousins Elevator and their insurer for the sum of $12,500, executing to them a release of liability. Also, a "friendly suit" was entered into and a judgment placed of record.

This action was then filed by the appellant against The Tipps Engineering & Supply Company alleging that faulty installation of the hoist was the cause of the death and asking for damages in the amount of $39,100. Appellee then filed an Answer and Motion to Dismiss, relying on the "friendly suit" as a bar to any further action based on the death of Dan Davis. After hearing argument from counsel, the Judge granted the motion and dismissed the Complaint.

For reversal, appellant relies upon the following point: "That, as a matter of law, the trial court erred in dismissing the Complaint of appellant."

The sole question in this case appears to be whether the "friendly suit" between Clay Smith, Jr., Administrator of the Estate of Dan Davis, appellant herein, and the Shea and Cousins Grain Elevator, is a bar to this action by appellant against The Tipps Engineering & Supply Company for damages arising out of the same cause of action. Appellant contends that the "friendly suit" was only a settlement of the claim against Shea and Cousins and that any claim the Administrator ever had against other parties for these damages is still valid and actionable.

The intention of the parties to the "friendly suit" must be ascertained by looking to the language contained in the Release and Subrogation Agreement executed by them which states:

"We hereby covenant that no release has been or will be given to or settlement or compromise made with any third party who may be liable for any damages to us and we in consideration of the above payment made by Thomas Shea and George Cousins doing business as Shea & Cousins Grain Elevator and the General Accident Fire & Life Assurance Corporation, their Insurance Carrier, hereby subrogate to them all rights and causes of action we may have against any person, persons, or corporations whomsoever for damages arising out of the above accident and we authorize Thomas Shea and George Cousins d/b/a Shea & Cousins Grain Elevator and the General Accident Fire & Life Assurance Corporation to sue in our names but at the cost of Thomas Shea and George Cousins d/b/a Shea & Cousins Grain Elevator and the General Accident Fire & Life Assurance Corporation and we hereby pledge full cooperation in such action."

That the suit filed by appellant against Shea & Cousins was only a "friendly suit" is evident from the wording of the judgment rendered therein which states:

"The defendants have offered and the plaintiff has agreed to accept the sum of $12,500, and this matter is submitted to the court for final approval and rendering of a judgment. The court, being well and sufficiently advised, finds that said settlement is fair and reasonable, and that the said judgment is to be paid in full settlement and satisfaction of any and all claims growing out of the death of the said Dan Davis."

After exhaustive research we were able to find only two cases in point. *Allbright Bros., Contractors, Inc., and for the Use and Benefit of National Surety Corporation* v. *Hull-Dobbs Co., et al,* 209 Fed. 2d 103 (1953), was a Sixth Circuit case where an Arkansas tortfeasor settled with an injured party, entered a "friendly suit" in the state court that recited that the judgment was in full settlement of all claims accruing to the injured party, paid the judgment and then went into Federal Court in Tennessee to recover contribution against joint tortfeasors. The parties agreed that the Arkansas Joint Tortfeasor statutes controlled, and the alleged joint tortfeasors moved to dismiss the complaint on the ground that since the "friendly suit" did not mention joint tortfeasors, their common liability has not been discharged and, therefore, there was no right of contribution. The district court dismissed and the Court of Appeals affirmed, stating:

"It is the contention of appellant that since the settlements and judgments were in full and complete settlement and satisfaction of any and all claims of the injured parties and all damages of every kind and description arising out of the accident, such settlements and judgments extinguished the liability of appellees, as joint tortfeasors, to the injured parties. The district court declared, however, that the settlements and judgments did not purport to be for the benefit of appellees, and did not release them from a liability with which they were not charged in the suit. The Arkansas Joint Tortfeasor Statute, in so far as here applicable, provides:

" 'A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged

956

the common liability or has paid more than his *pro rata* share thereof.

" 'A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

\* \* \*

" 'Nothing in this act shall be construed to affect the several joint tortfeasors' common law liability to have judgment recovered and payment made from them individually by the injured person for the whole injury; but the recovery of a judgment by the injured person against one joint tortfeasor does not discharge the other joint tortfeasor.

\* \* \*

" 'A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides . . . Sections 34-1002, 1003, and 1004 of the Arkansas Statutes of 1947, Annotated.'

"The release of appellant by the injured parties did not, under the foregoing statutory provisions, discharge appellees, since it did not therein provide for their release. They were not named in the release and settlement agreements or in the judgments entered thereon; and a release of one joint tortfeasor does not discharge another tortfeasor not named therein. See *Raughley* v. *Delaware Coach Co.*, Del. Super., 91 A. 2d 245."

After careful consideration, we agree with the holding in the *Allbright* case, *supra*, that appellee's liability to appellant could not have been released by the "friendly suit" against Shea & Cousins as it did not mention joint tortfeasors.

Since the applicable provisions of the Arkansas statutes are set out above in the quote from the *Allbright* case, they will not be set out again. However, it seems appropriate to point out the last phrase in Sec. 34-1003 of Ark. Stats. Ann. (1947): "but the recovery of a

judgment by the injured person against one joint tort-feasor does not discharge the other joint tortfeasor.'' This phrase would appear, on its face, to be sufficient to provide a basis for a rendition of judgment in this case for the appellant. We find that this identical language has been construed in its broadest sense in *Hackett* v. *Hyson*, 72 R. I. 132, 48 A. 2d 353, 166 A. L. R. 1096, where the Rhode Island Court said that this provision intended the inclusion of an actual recovery, payment, and satisfaction of a judgment. In other words, neither or all of these things would discharge a joint tortfeasor. That Court, with which we agree, said that this provision of the Uniform Contribution Among Tortfeasors Act was intended to reverse the common-law rule which discharged all tortfeasors jointly liable for the same tort, upon the satisfaction of a judgment by one of their number.

In the *Hackett* case there was a contested suit, and the Rhode Island Court decided that the judgment rendered therein did not discharge joint tortfeasors who were not parties. In the case at bar there is not a contested suit. Here, there was only an out of court settlement which was placed on the court records for the sole purpose of making the settlement more binding. There were minors involved, and, of course, all possible precautions must be taken in settling with minors if the settlement is to be safe from attack. The same situation was before the Court of Appeals in the *Allbright* case, *supra*, and they said that the settlement judgment there did not discharge joint tortfeasors.

The statutory provisions quoted above are all part of the Uniform Contribution Among Tortfeasors Act, which Arkansas adopted in 1941 as Act No. 315, and, as do all uniform acts, the Act contains a provision calling for uniformity of interpretation and construction.

Following this rule, the order of the trial court dismissing the complaint is reversed and the cause is remanded for trial on its merits. We do point out, however, that if judgment is obtained against appellee, appellee will be entitled to credit thereon in an amount

equal to that amount heretofore recovered by appellant from other tortfeasors. See: *Giem* v. *Williams, Administratrix,* 215 Ark. 705, 222 S. W. 2d 800.

Reversed and remanded.

ROBINSON, J., concurs.